UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 18-cr-60185-BB-3

UNITED STATES OF AMERICA,

    Plaintiff,

v.

TERRENCE LEONARD EWELL, SR.,

    Defendant.
_____/

## ORDER

**THIS CAUSE** is before the Court upon Defendant Terrence Ewell, Sr.'s Motion for Compassionate Release Re: 18 U.S.C. § 3582, Including Legal Argument, ECF No. [190] ("Motion"). The Government filed a response in opposition, ECF No. [192] ("Response"), to which Defendant filed a reply, ECF No. [196] ("Reply"). The Court has considered the Motion, the Response, the Reply, the record in this case, the applicable law, and is otherwise fully advised. For the reasons set forth below, the Motion is denied.

    **I.**    **BACKGROUND**

On June 6, 2019, Defendant was sentenced to 60 months' imprisonment followed by three years supervised release following his convictions for possession with intent to distribute cocaine, heroin, and fentanyl in violation of 21 U.S.C. § 841(a)(1) (Counts 3-4 and 7-10). ECF Nos. [157]; [158]. His sentence as to each count is to be served concurrently. Defendant is fifty-nine years old currently housed at FCI Butner Low.

On October 26, 2020, Defendant filed the instant Motion in which he seeks compassionate release "with a sentence of time served, and place[d] . . .on house arrest for the remainder of his

sentence" in light of the current coronavirus ("COVID-19") pandemic. ECF No. [190] at 1. He represents that he suffers from high blood pressure, cardiomyopathy, gastro-esophageal reflux disease, gout, abnormalities of his heartbeat, he uses a walker, he has an implanted cardiac pacemaker and cardiac defibrillator, and he has been hospitalized on several occasions between January 2003 and January 2015, and in January 2019 to have his pacemaker replaced. *Id.* at 3-4. According to Defendant, he tested positive for COVID-19 in early June 2020. *Id.* at 4. He asserts that "[n]owhere in the federal system has the outbreak been as deadly as at the Butner complex." *Id.* at 5. In particular, over 600 inmates have tested positive and seventeen inmates and one staff member have died. Defendant maintains that he will reside with his son in Oakland Park, Florida if he is released. *Id.* at 7. The Government opposes Defendant's request. ECF No. [192].

SARS-CoV-2, the novel coronavirus, and COVID-19, the disease it causes, have spread throughout the world and are impacting every person's life. The United States is currently reporting more confirmed cases of COVID-19 and deaths as a result than any other country, with more than 13,295,605 confirmed cases and over 266,051 reported deaths as of November 30, 2020.[1] The COVID-19 pandemic poses a serious danger to society at large, and especially to at-risk inmates. In addition, COVID-19 poses a higher risk to incarcerated individuals who are unable to practice health precautions available to the general public, such as social distancing.

As a result of this dynamic, unpredictable, and unprecedented situation, Attorney General William Barr has urged the Bureau of Prisons ("BOP") to move vulnerable inmates out of institutions and to home confinement, where appropriate. *See* Mem. from Attorney Gen. William Barr for Dir. of Bureau of Prisons re: Increasing Use of Home Confinement at Institutions Most

---

[1] *Cases of Coronavirus Disease (COVID-19) in the U.S.*, Centers for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/cases-updates/cases-in-us.html (last updated November 30, 2020).

Affected by COVID-19 (Apr. 3, 2020), https://www.justice.gov/file/1266661/download ("Memorandum"). The Memorandum identifies several facilities that have been particularly affected and which should be given priority in the BOP's consideration of implementing home confinement, including FCI Oakdale, FCI Danbury, and FCI Elkton. *Id.* at 1. In addition, the Attorney General has made an express finding that extant emergency conditions are materially affecting the functioning of the BOP, and directs that the BOP immediately maximize appropriate transfers to home confinement of all appropriate inmates at the specifically named facilities, and other similarly situated facilities where COVID-19 is materially affecting operations. *Id.* The Memorandum further directs the BOP to review all inmates who have COVID-19 risk factors as established by the Centers for Disease Control and Prevention ("CDC") to determine suitability for home confinement, while emphasizing the importance of protecting the public from individuals who may pose a danger to society, and recognizing the need to prevent over-burdening law enforcement with "the indiscriminate release of thousands of prisoners onto the streets without any verification that those prisoners will follow the laws when they are released . . . and that they will not return to their old ways as soon as they walk through the prison gates." *Id.* at 2-3. The Memorandum also stresses the need for careful individualized determinations regarding the propriety of releasing any given inmate and does not encourage indiscriminate release. *Id.* at 3.

## II. DISCUSSION

"Generally, a court 'may not modify a term of imprisonment once it has been imposed.'" *United States v. Pubien*, No. 19-12078, 2020 WL 897402, at *2 (11th Cir. Feb. 25, 2020) (quoting 18 U.S.C. § 3582(c)).

> "The authority of a district court to modify an imprisonment sentence is narrowly limited by statute." [*United States v. Phillips*, 597 F.3d 1190, 1194-95 (11th Cir. 2010)]. Section 3582(c) of Title 18 provides that the district court may not modify a defendant's imprisonment sentence except: (1) if the Bureau of Prisons files a

motion and extraordinary or compelling circumstances warrant modification or if the defendant is at least 70 years old and has served 30 years in prison; (2) if the modification is expressly permitted by statute or Federal Rule of Criminal Procedure 35; or (3) if the defendant's original sentencing range has subsequently been lowered as a result of an amendment to the Guidelines by the Sentencing Commission. 18 U.S.C. § 3582(c).

*United States v. Shaw*, 711 F. App'x 552, 554-55 (11th Cir. 2017); *see also United States v. Celedon*, 353 F. App'x 278, 280 (11th Cir. 2009); *United States v. Diaz-Clark*, 292 F.3d 1310, 1316-18 (11th Cir. 2002). Thus, "[t]he law is clear that the district court has no inherent authority to modify a sentence; it may do so only when authorized by a statute or rule." *United States v. Rivas*, No. 19-11691, 2020 WL 398708, at *4 (11th Cir. Jan. 23, 2020) (quoting *United States v. Puentes*, 803 F.3d 597, 605-06 (11th Cir. 2015)); *see also United States v. Llewlyn*, 879 F.3d 1291, 1296-97 (11th Cir. 2018) (quoting *Dillon v. United States*, 560 U.S. 817, 827 (2010)).

Defendant seeks relief under the compassionate release provision of 18 U.S.C. § 3582(c)(1)(A), which provides:

> (c) Modification of an imposed term of imprisonment.— The court may not modify a term of imprisonment once it has been imposed except that—
>
> (1) in any case—
>
> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) [18 U.S.C. § 3553(a)] to the extent that they are applicable, if it finds that—
>
>> (i) extraordinary and compelling reasons warrant such a reduction . . . .
>>
>> . . . .
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

4

18 U.S.C. § 3582(c)(1)(A)(i).

Under the relevant Sentencing Guidelines policy statement, the Court "may reduce a term of imprisonment . . . if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent they are applicable, the court determines that . . . extraordinary and compelling reasons warrant a reduction." U.S. Sentencing Guidelines Manual § 1B1.13 (U.S. Sentencing Comm'n 2018). The Sentencing Guidelines add that the Court should reduce a sentence only if the "defendant is not a danger to the safety of any other person or to the community." *Id.*

Accordingly,

> Section 3582 sets out the order in which this Court should analyze a criminal defendant's entitlement to a sentencing reduction. *First*, when the defendant brings the motion himself, the Court must ascertain whether he "has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or [whether there has been a] lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(a). *Second*, the Court should "consider[] the factors set forth in section 3553(a) to the extent that they are applicable." *Id. Third*, the Court should turn to the "extraordinary and compelling reasons" test, as outlined in U.S.S.G. § 1B1.13 cmt. n.1. And *fourth*, the Court should determine whether the defendant poses a "danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." *Id.*

*United States v. Stuyvesant*, No. 09-60184-CR, 2020 WL 1865771, at *2 (S.D. Fla. Apr. 14, 2020). Thus, in order to grant Defendant's request pursuant to § 3582(c)(1)(A), the Court must: (1) find that Defendant has exhausted his administrative remedies with the BOP; (2) weigh the relevant § 3553(a) factors; (3) conclude that extraordinary and compelling reasons warrant compassionate release in this case; and (4) determine that Defendant is not a danger to the community. Moreover, Defendant bears the burden of establishing that compassionate release is warranted. *See United States v. Hamilton*, 715 F.3d 328, 337 (11th Cir. 2013) (explaining that "a defendant, as the § 3582(c)(2) movant, bears the burden of establishing that" compassionate release is warranted,

but that, even where a defendant satisfies this burden, "the district court still retains discretion to determine whether a sentence reduction is warranted").

The Motion and Reply request that Defendant be released to home confinement due to his underlying medical conditions. The Government opposes, arguing that (i) Defendant's medical issues were known to the Court at the time of sentencing; (ii) although Defendant tested positive for COVID-19, he was asymptomatic, quarantined, did not require hospitalization, and he reports no declining health; (iii) the BOP has modified its operating procedures to effectively respond to the COVID-19 pandemic; (iv) Defendant fails to present "extraordinary and compelling reasons" to support his release; and (v) the § 3553(a) factors do not weigh in his favor. Upon review and consideration, the Court concludes that Defendant does not present circumstances warranting a sentence reduction and early release.

Defendant has satisfied the first inquiry in the section 3582 analysis, administrative exhaustion. However, as explained below, he fails to demonstrate that the applicable § 3553(a) factors weigh in favor of a sentence modification or that extraordinary and compelling circumstances exist.

The applicable § 3553(a) factors include, among others: "(1) the nature and circumstances of the offense and the history and characteristics of the defendant," as well as "(2) the need for the sentence imposed — (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; [and] (C) to protect the public from further crimes of the defendant." 18 U.S.C. § 3553(a). At the time of sentencing, the Court concluded that a term of imprisonment of 60 months was appropriate in this case in light of these § 3553(a) considerations. To date, Defendant has served 22 months of his sentence, or 37%. Although the Government concedes that Defendant's

cardiomyopathy is a "qualifying chronic medical condition," ECF No. [192] at 9, which the Court notes as discussed below, Defendant has been assigned to FCI Butner Low, which facility provides enhanced medical services for inmates, including those with complex and chronic conditions that require frequent clinical contacts and inpatient care.[2] Defendant has not shown further bases to persuade the Court that the sentence imposed should be modified based upon the factors set forth in § 3553(a). *See United States v. Post*, No. 15-cr-80055, 2020 WL 2062185, at *2 (S.D. Fla. Apr. 29, 2020) (noting "that much of the information that [the defendant] provide[d] in his Motion was before the Court at the time of his sentencing," and the Court imposed an appropriate sentence considering this information); *United States v. Zamor*, No. 17-20353-CR, 2020 WL 2062346, at *2 (S.D. Fla. Apr. 29, 2020) ("Crucially, [the defendant] has completed less than 40% of this sentence, and the applicable 18 U.S.C. § 3553(a) factors . . . do not warrant [his] release after serving less than half of his sentence."); *United States v. Rodriguez-Orejuela*, No. 03-cr-20774, 2020 WL 2050434, at *7 (S.D. Fla. Apr. 28, 2020) (noting that, in weighing the sentencing factors, "the Court's analysis is virtually unchanged from thirteen years ago.").

Additionally, regarding the "extraordinary and compelling reasons" test, CDC guidance indicates that individuals with the following health conditions are at a higher risk of contracting severe illness due to COVID-19: cancer, chronic kidney disease, COPD, serious heart conditions such as heart failure, coronary artery disease or cardiomyopathies, obesity, Type 2 diabetes, sickle

---

[2] *Care Level Classification for Medical and Mental Health Conditions or Disabilities*, Federal Bureau of Prisons Clinical Guidance May 2019, https://www.bop.gov/resources/pdfs/care_level_classification_guide.pdf; *Federal Correctional Institution Butner Low*, https://www.prisonerresource.com/federal-prisons/fci-butner-low/ (last visited November 30, 2020).

cell disease, smoking, pregnancy, and people in an immunocompromised state.[3] Further, CDC guidance indicates that individuals with the following health conditions might be at an increased risk of contracting severe illness due to COVID-19: moderate to severe asthma, cerebrovascular disease, cystic fibrosis, high blood pressure, neurologic conditions, liver disease, overweight, pulmonary fibrosis, thalassemia, Type 1 diabetes, and individuals with an immunocompromised state.

Although Defendant's medical history reflects high blood pressure, cardiomyopathy, a pacemaker, and the use of prescription medications, he fails to allege that any of his present ailments are terminal or that they substantially diminish his ability to provide self-care within the correctional facility environment. Indeed, even though he contracted COVID-19 on June 3, 2020, he remains asymptomatic, he did not require hospitalization or outside medical assistance, he was quarantined, and he received regular medical examinations and tests. The medical records reflect that the Defendant tested negative for COVID-19 on July 29, 2020 and August 10, 2020, and that he is "considered COVID-19 recovered." *See* ECF No. [194-1] at 5-6, 8, 11. Further, Defendant is relatively young, is fifty-nine years old, his medical records do not reflect that his treatments while incarcerated are inadequate to care for his medical needs (past, present, and future), and he otherwise fails to provide any evidence or argument that his health is deteriorating, much less from COVID-19.

The Court is sympathetic to Defendant's health conditions and his concerns regarding COVID-19 outbreaks in prison facilities, and notes that certain of his medical conditions — i.e., high blood pressure and cardiomyopathy — are risk factors that are designated in the CDC's

---

[3] *People of Any Age with Underlying Medical Conditions*, Centers for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last updated November 2, 2020).

guidance. However, the BOP website indicates that there are presently four active cases involving the virus at FCI Butner Low, of which only one involves an inmate.[4] And over 887 inmates have completed COVID-19 tests. Further, Defendant does not persuade the Court that current procedures already in place or resources available at FCI Butner Low are insufficient to protect him and other at-risk individuals. The Government reports that the BOP's operations are in "Phase Ten of the Action Plan," which "requires that all inmates in every BOP institution be secured in their assigned cells/quarters;" there are "limited group gatherings" and the BOP has "severely limited the movement of inmates and detainees;" all staff and inmates are issued masks and encouraged to social distance; asymptomatic inmates are quarantined for a minimum of 14 days or until medically cleared; symptomatic inmates are isolated until they test negative or receive medical clearance; every newly admitted inmate is screened for COVID risk factors and symptoms; staff members are screened; contractor access is restricted to essential services or necessary maintenance on essential services, and authorized contractors or volunteers are also screened for symptoms and risk factors. ECF No. [192] at 4-5.[5]

Moreover, "the BOP Director has not found COVID-19 alone to be a basis for compassionate release." *United States v. Harris*, No. 2:12-cr-140-FtM-29DNF, 2020 WL

---

[4] *COVID-19 Cases*, Federal Bureau of Prisons, https://www.bop.gov/coronavirus/ (last visited November 30, 2020).

[5] Although Defendant analogizes his circumstances to co-defendant Larry Weems, who was granted compassionate release, *see* ECF No. [190] at 7-9 (citing ECF No. [187]), the Court agrees with the Government that Mr. Weem's case is distinguishable. As to Mr. Weems, the Court noted that his case involved "unique circumstances," Mr. Weems had completed 72% of his sentence, "the BOP was prepared to release [Mr. Weems] from confinement without home detention in late August 2020 had he merely completed 28 more credit hours of his RDAP program," which was shut down; Mr. Weems had "lingering problems" from COVID-19 and he was "now being considered for dialysis," and "the type of release [Mr. Weems] is now moving this Court to impose (home-confinement) is *more* onerous than the release he was set to begin in August, 2020 (supervised release), had he finished the final 28-hours of the program." ECF No. [187]. Those "unique" features are not present in this case.

9

1969951, at *2 (M.D. Fla. Apr. 24, 2020) (citing *United States v. Eberhart*, No. 13-cr-313-PJH-1, 2020 WL 1450745, at *2 (N.D. Cal. Mar. 25, 2020) ("General concerns about possible exposure to COVID-19 do not meet the criteria for extraordinary and compelling reasons for a reduction in sentence set forth in the Sentencing Commission's policy statement on compassionate release, U.S.S.G. § 1B1.13.")); *see also United States v. Kelly*, No. 2:03-cr-126-FtM-29, 2020 WL 2039726, at *1 (M.D. Fla. Apr. 28, 2020) (The "defendant does not allege any extraordinary or compelling circumstances to support compassionate release."). Thus, Defendant has not met his burden that extraordinary and compelling reasons exist to support his request for compassionate release.[6]

### III.  CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** that the Motion, **ECF No. [190]**, is **DENIED**.

**DONE AND ORDERED** in Chambers at Miami, Florida, on December 1, 2020.

**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies furnished to:

Counsel of record

Terrence Leonard Ewell, Sr.
26815-004

---

[6] Because Defendant's Motion fails to establish any extraordinary and compelling circumstances warranting his release to home confinement, the Court does not need to address the final consideration of whether Defendant poses a danger to the safety of others or to the community under to § 3142(g).

Case No. 18-cr-60185-BB-3

Butner Low
Federal Correctional Institution
Inmate Mail/Parcels
Post Office Box 999
Butner, NC 27509

11